**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARIA HARRIS, et al., ) | |
| Plaintiffs, ) | |
| ) | No. CIV 08-008-TUC-CKJ |
| vs. ) | |
| ) | **ORDER** |
| COCHISE COUNTY, ) | |
| ) | |
| Defendant. ) | |

Pending before the Court are Plaintiffs' Motion in Limine Re: Dr. Leon's Untimely Affidavit and Opinions [Doc. # 174], Defendant's Motion in Limine Re: Damages [Doc. # 175], and Defendant's Motion in Limine Re: Spousal Communications [Doc. # 176]. Responses and Replies have been filed and, on May 13, 2010, the parties presented oral argument.

*Plaintiffs' Motion in Limine # 2, RE: Dr. Leon's Untimely Affidavit and Opinion RE: Gerd/Acid Reflux Disease*

Defendant Cochise County ("the County") has indicated in the Joint Pretrial Order that it will present Dr. Robert G. Leon ("Dr. Leon") and the opinions in his affidavit, including those regarding GERD and/or acid reflux disease at trial. Plaintiffs Maria Harris ("Harris") and Dr. Glenn Harris (collectively, "Plaintiffs") assert that Harris's medical records regarding the medical condition at issue were disclosed early in the case. Plaintiffs point out that the deadline for Cochise County to disclose expert testimony was August 9,

2008.[1]    In compliance with the deadline, Cochise County disclosed Dr. Leon, a gastroenterologist, to testify in accordance with his August 5, 2008, report.  Dr. Leon indicates in his report that he has reviewed, among other things, Harris's medical records from both Dr. Jaya Maddur ("Dr. Maddur") and Dr. James Buttke.  Plaintiffs assert that Dr. Leon's report discusses only peptic ulcer disease, and how purported stress aggravated "Mrs. Harris' peptic symptomology" and how "he has never written a medical excuse for a patient to miss work for over 1 month because of peptic symptomology." Motion, Ex. C.  Plaintiffs assert that Dr. Leon's report does not make any mention of GERD or acid reflux disease and does not indicate that Dr. Leon would be offering any opinions regarding the relationship between stress and GERD/acid reflux disease.  Plaintiffs further assert that the County's disclosure statement makes no reference in its disclosure of Dr. Leon that he would be offering opinions regarding acid reflux disease or GERD or any relationship between stress and GERD/acid reflux disease.  Plaintiffs also assert that they subpoenaed records from Dr. Leon, and that none of the records produced pursuant to Dr. Leon's subpoena mentioned GERD or acid reflux disease, or any opinions regarding GERD or acid reflux disease. Motion, Ex. D.

Additionally, Plaintiffs assert that the County did not supplement Dr. Leon's expert opinions before the written discovery deadline or supplement his opinions in any way that would have put Plaintiffs on notice that Dr. Leon also planned to provide opinions regarding GERD or acid reflux disease.  Plaintiffs assert that the County attached to its motion for summary judgment an affidavit from Dr. Leon that included opinions regarding GERD and acid reflux disease.  Plaintiffs point out that the affidavit was signed on December 9, 2008, more than eight weeks after the close of discovery and due date for expert rebuttal testimony. Motion, Ex. E, Affidavit.

---

[1]The deadline for written discovery was August 27, 2008.  Doc. # 16.  The deadline for rebuttal expert witness testimony and the completion of discovery was September 30, 2008.  Doc. # 16.

1    The County asserts, however, that the Amended Complaint makes reference to

2    Harris's stomach condition, referring to "stomach ulcers" caused by "plyori bacterial

3    stomach infection" and/or "bacterial infection."   Amended Complaint, ¶¶ 8, 9, and 14.

4    Further, the County points out that Plaintiffs alleged that Brian Oertel defamed and/or

5    portrayed Plaintiff in a false light by claiming that her stomach condition was "stress-

6    related." *Id*. at ¶¶ 13, 27 and 35.  The County asserts that its Rule 26(a)(2) expert disclosure

7    named Dr. Leon as a witness to testify that, in fact, Plaintiff's peptic condition was

8    stress-related.   The County asserts that Dr. Leon's August 5, 2008, report does not

9    distinguish Harris's peptic disease as being either an acid reflux disease or a peptic ulcer

10   disease related to bacterial infection, but merely describes his report as being based on a

11   number of documents, including the medical records of Harris's physician Dr. Maddur.  The

12   County asserts that, on August 26, 2008, Dr. Maddur testified that Harris's peptic condition

13   includes both a history of peptic ulcers from bacterial infection and his own treatment of her

14   for acid reflux disease in the August to September 2005 timeframe.  Additionally, in his

15   December 9, 2008, affidavit, Dr. Leon described peptic disease as including both peptic ulcer

16   disease and acid reflux disease and states that stress is related to the aggravation of both

17   forms of peptic disease.

18        Plaintiffs assert that the County had an affirmative obligation to disclose Dr. Leon

19   and all of his opinions to be presented at trial by the expert disclosure deadline. The County does

20   not disagree with this assertion, but asserts, however, that Dr. Leon timely disclosed opinion

21   was that Harris's peptic symptomology and/or peptic disease was stress related and that, in

22   his August 5, 2008, Report, Dr. Leon did not limit his opinion to either peptic ulcer disease

23   or acid reflux disease.   Further, the report indicates that it is based on Dr. Maddur's

24   documentation which includes both a history of peptic ulcer disease and the presence of acid

25   reflux disease.  Therefore, the County asserts that Dr. Leon's opinions regarding both forms

26   of peptic illness are timely and supported by the record and, ultimately, are the same - that

27   both forms of peptic illness are stress-related.

28

1          The County points out that the reason for expert disclosure is "to provide opposing

2     parties reasonable opportunity to prepare for effective cross examination and perhaps arrange

3     for expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir.

4     2008).  The County asserts that Dr. Leon's report sufficiently permits Plaintiffs a reasonable

5     opportunity to understand the opinions and bases of the  opinions, prepare for cross

6     examination, and to decide whether a rebuttal expert is necessary.  While the County

7     acknowledges that the statements in Dr. Leon's affidavit are not identical to the statements

8     in his expert report, they do not substantially differ.  Further, the County asserts that the

9     additional detail that peptic disease or symptomology includes both peptic ulcer disease and

10    acid reflux disease does not offend Fed.R.Civ.P. 26(a)(2).  *In re Stand "N Seal Products*

11    *Liability Litigation*, 623 F.Supp.2d 1355, 1361-62 (N.D.Ga., 2009); *Rowe Int'l Corp. v.*

12    *Ecast, Inc.*, 586 F.Supp.2d 924, 935 (N.D.Ill. 2008); *In re Young Broadcasting Inc.*, 2010

13    WL 1544401, 5 (Br. S.D.N.Y. 2010) (where expert affidavit provides evidentiary details for

14    an opinion expressed in the report, those portions of his or her affidavit can be considered).

15    The County asserts that Dr. Leon's report does not limit itself to a discussion of either peptic

16    ulcer disease or acid reflux disease.  The County asserts that, while the report talks in general

17    terms about Harris's peptic symptomology, the source of that peptic symptomology and

18    history comes from Dr. Maddur's records, which refer to both a peptic ulcer disease and acid

19    reflux disease history.

20          Plaintiffs argue, however, that while the December 9, 2008, affidavit was consistent

21    with the original opinion, there is nothing in the August 2008 report that places Plaintiffs on

22    notice that Dr. Leon would give any specific opinions about acid reflux disease.  *Tompkin*

23    *v. Philip Morris, U.S.A.*, 362 F.3d 882 (9th Cir. 2004).  Plaintiffs assert that, since the County

24    did not provide an expert opinion by the expert deadline, the County had an obligation to

25    timely supplement Dr. Leon's opinions no later than the discovery deadline in this case.[2]

26

27          [2]The County does not respond to this argument.

28
- 4 -

Plaintiffs assert that, if the County wished to supplement Dr. Leon's opinions after the close of discovery, the County was required to file a motion for leave of court supported by a showing of good cause. Fed. R. Civ. P. 16(b)(4) (permitting modification of the court's scheduling order only on showing of "good cause"); Fed.R.Civ.P. 26(a)(2) (requirements for disclosure of experts). Plaintiffs assert that good cause in this context requires a showing, among other things, that the party seeking the extension was diligent in its discovery efforts yet could not complete discovery. Plaintiffs point out that Dr. Leon's records indicate that the County did not retain him until August 1, 2008, and the County did not receive the report until August 5, 2008 – just a few days before the expert disclosure deadline. Further, Plaintiffs assert that Dr. Leon's records indicate that the County did not contact Dr. Leon again until December 9, 2008, to obtain his affidavit and opinions regarding GERD/acid-reflux disease. Plaintiffs assert that the County's lack of diligence in obtaining and disclosing Dr. Leon's opinions undermines any claim that there was good cause for the untimely disclosure.

Additionally, Plaintiffs assert that they are prejudiced from the untimely disclosure because they has been deprived of all opportunity to depose or otherwise conduct discovery regarding Dr. Leon's new opinions regarding GERD/acid reflux disease or to disclose a rebuttal expert on the matter. Indeed, Plaintiffs assert that they would undoubtably be subject to the County's non-disclosure objections at trial if Plaintiff solicited testimony from Harris's treating physicians regarding Dr. Leon's affidavit and opinions regarding GERD/acid reflux disease.

Plaintiffs compare this case to *Marcin Engineering, LLC. v. Founders at Grizzly Ranch, LLC.*, 219 F.R.D. 516, 521 (D.Colo. 2003), where the defendant disclosed revised expert reports months after the court's expert disclosure deadlines. Indeed, one of the expert affidavits was attached to briefing on motions for summary judgment. In denying a request to reopen expert discovery, the *Marcin* court considered that (1) the defendant had the materials required to issue the untimely opinions and reports four months before the expert

disclosure deadline, but did not review the materials until just five days before the expert disclosure deadline; (2) the records and other materials on which the expert's untimely opinions were based were discussed in the timely expert report, and were discussed at length in witness depositions; (3) defendant did not seek an extension of the expert disclosure deadline, and (4) the expert's untimely affidavit did not include any new information or evidence not available to defendant before the disclosure deadline. *Id*. at 521-523. The court concluded that the defendant's dilatory conduct did not justify reopening discovery and would irreparably prejudice the plaintiff. *Id*. at 523 -524 ("reopening expert discovery at this point would also prejudice Marcin because it relied on Erkan's timely filed expert report in preparing its motions to exclude his testimony and motion for partial summary judgment and because the further delay that would result from reopened discovery would only add to Marcin's burden in prosecuting what has already been an unnecessarily contentious, time consuming and expensive action for all concerned").

Plaintiffs assert that the County had all of the materials necessary to issue Dr. Leon's untimely affidavit and opinions regarding GERD/acid reflux disease in August, well in advance of the discovery cut-off and expert rebuttal disclosure deadline, that the issues raised by Dr. Leon's untimely affidavit and opinions – and GERD/acid reflux disease in particular – had been discussed at length in witness depositions, and were available to the County and Dr. Leon far in advance of the discovery cut off. Moreover, Plaintiffs assert that the County did not seek an extension of the expert disclosure deadline or leave of court to supplement Dr. Leon's opinions and Dr. Leon was not retained until just a few days before the expert disclosure deadline. Plaintiffs assert that, like *Marcin*, there is no good cause to permit the untimely opinions and affidavit and doing so would prejudice Plaintiffs.

The County's Response states that, "Dr. Maddur testified that Plaintiff's peptic condition includes both a history of peptic ulcers from bacterial infection and his own treatment of her for acid reflux disease[.] Response, p. 3. Dr. Maddur testified as to Harris's history of ulcers, history of Helicobacter pylori infection, and acid reflux. Response, Ex. B,

- 6 -

Doc. # 181-1, pp, 16-17 of 22. However, the County has not pointed to any specific testimony that Harris's condition included both peptic ulcers and acid reflux disease. In other words, there is no evidence in the record where any doctor/expert/report indicated that peptic disease included both ulcers and acid reflux until Dr. Leon's December 9, 2008, affidavit.

The County has pointed out, however, that Harris herself used peptic disease to interchangeably include acid reflux, as well as bacterially caused peptic ulcers. In the Amended Complaint, Plaintiffs referred to "stomach ulcers" caused by "plyori bacterial stomach infection" and/or "bacterial infection." Further, Harris's medical records showed that Harris's only illness during September and October 2005 was a peptic condition described by her doctor as acid reflux disease, nausea, and heartburn. The County asserts:

> Plaintiff cannot genuinely feign any surprise here. She, better than anyone, knows full well that in May 2005 she had the presence of the bacteria that causes peptic ulcers, that in September 2005 she was tested and did not have the bacteria that causes peptic ulcers, and that in October 2005 it was confirmed that she merely suffered from acid reflux disease, nausea, and heartburn and that Dr. Maddur's records, upon which Dr. Leon's opinions are based, reflects this complete history. Moreover, she knows full well that, in her own Amended Complaint, she refers to all of these conditions as, generally, peptic ulcer disease.

> Indeed, if Dr. Leon's opinions are artificially limited, as Plaintiff suggests, than Plaintiff should not be allowed to testify about any illness suffered during August, September, or October 2005 because the only material health condition that she had in that period was the peptic illness characterized by acid reflux, nausea, and heartburn and not, as her own Amended Complaint suggests, the peptic illness characterized as peptic ulcer disease.

Response, p. 4. However, the County cannot pick and choose what Plaintiffs "knew" to assert an expert opinion is not needed.

Dr. Leon did state in his report that stress is a factor in peptic disease – he did not limit that opinion to just peptic ulcers. However, that Dr. Leon's later opinions regarding acid reflux do not contradict the original report, does not mean that Plaintiffs were on notice that Dr. Leon would be testifying as to the additional opinions.

During argument, the County asserted that the affidavit simply contained more specific information that was consistent with the original opinion. However, the County simply has not provided an adequate reason why the more specific consistent opinions could

1  not have been offered prior to the expert disclosure deadline.  Although counsel for  the

2  County asserted during argument that he did not think a deposition of Dr. Leon is needed

3  based on the more specific information, that conclusion precludes Plaintiffs from determining

4  how best to present their case.  The Court finds Plaintiffs have been prejudiced by the

5  untimely disclosure of the more specific opinions.

6  Plaintiffs assert that the only way to cure the prejudice to Plaintiffs of Dr. Leon's

7  untimely affidavit and opinions is to permit a deposition of Dr. Leon and, because the County

8  is responsible for the untimely disclosure the cost of the deposition – including any payment

9  for Dr. Leon's professional time and Plaintiffs' attorney's fees and costs – should be the

10 responsibility of the County.  Fed.R.Civ.P. 37(c)(1)(A) ("in addition to or instead of this

11 sanction [of exclusion of the evidence] the court on motion ... may order payment of the

12 reasonable expenses, including attorney's fees, caused by" the failure to timely supplement

13 disclosures); *Schuette v. City of Phoenix*, 2010 WL 1253193, *4 (D.Ariz.,2010) (awarding

14 sanctions of attorney's fees and costs necessitated by incomplete expert disclosure); *Yeti by*

15 *Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir.2001) (upholding

16 exclusion of expert); *Jarritos, Inc. v. Reyes*, 345 Fed.Appx. 215, 217 (9th Cir. 2009)

17 (upholding th exclusion of expert reports).

18 Because the County asserts that Dr. Leon's proposed testimony has not changed since

19 August 5, 2008, when Dr. Leon's expert report was submitted, the County asserts that

20 Plaintiffs' decision not to bother disclosing a rebuttal expert witness or deposing Dr. Leon

21 does not warrant permitting a deposition at this time, much less at the County's expense.

22 The Court finds that, because the more specific details of Dr. Leon's opinions

23 prejudice Plaintiffs, admission of this evidence is not appropriate without giving Plaintiffs'

24 counsel the opportunity to depose the witness.[3]  Because the trial date is not scheduled until

25

26 [3]The Court notes that counsel for the County asserted during argument that there
would probably be no prejudice to the County if Dr. Leon was limited to the opinions
27 included in the August 5, 2008, report.

28

1 September, the Court finds it appropriate to permit the County to elect to have Dr. Leon

2 deposed by Plaintiffs, at the County's expense, if the County wishes to present the expanded

3 opinions at trial. In the event the County chooses to permit Plaintiffs to depose Dr. Leon so

4 the more specific opinions may be used at trial, the County shall arrange for the deposition

5 within 30 days of this Order and Plaintiffs shall disclose any rebuttal expert opinions within

6 21 days of the deposition of Dr. Leon. Because Plaintiffs did not elect to depose Dr. Leon

7 based on the original expert opinions, the opinions of Dr. Leon inquired into in any

8 deposition conducted pursuant to this Order shall be limited to those disclosed in Dr. Leon's

9 December 9, 2008, affidavit.

10

11 ***Defendant's Motion in Limine Re Damage Issues*** [Doc. # 175][4]

12 The County asserts that any evidence, testimony, or argument that Harris was

13 damaged monetarily, emotionally, or otherwise by her resignation from employment or that

14 supports a punitive damages award should be precluded. Plaintiffs agree that evidence that

15 is solely relevant to punitive damages is not admissible (i.e., Plaintiffs are not seeking

16 punitive damages).

17 The County points out that this Court determined that the County was entitled to

18 judgment as a matter of law on the claim that Harris was constructively discharged from her

19 employment. September 30, 2009, Order, p. 16. The County asserts that it cannot be held

20 accountable for any losses that Harris might have sustained, of any nature, due to her

21 voluntary decision to resign her employment. The County asserts that Plaintiffs' damages

22 evidence, testimony, and argument must be limited to emotional distress for Harris alleged

23 to be proximately caused by the defamation, false light, and/or ADA-disclosure claims

24

25 [4]Although not discussed by the parties, back pay is an equitable remedy to be awarded

26 by a court, not a jury, under Title VII (i.e., under the ADA and Civil Rights Act of 1991).
2 Disability Discrimination Workplace § 25:2; *see also Lutz v. Glendale Union High School*,

27 403 F.3d 1061, 1069 (9th Cir. 2005).

28

1  arising from the September 30, 2005, Oertel letter and/or claimed emotional distress for

2  Harris alleged to be proximately caused by the ADA retaliation claim arising from the

3  October 4, 2005 Carper letter.

4          Plaintiffs assert, however, that job-loss related damages are recoverable under other

5  remaining claims.  Plaintiffs point out that Harris's claims for violations of the privacy

6  provisions of the ADA and retaliation under the ADA remain pending and that Harris is

7  entitled to recover all damages proximately caused by the County's misconduct under the

8  ADA, including her job-loss related damages.    Plaintiffs argues that 42 U.S.C.

9  §12112(d)(4)(c) and 42 U.S.C. §12112(d)(3)(B)-(C), permits her to recover damages as

10  provided in 42 U.S.C. §12117, including all remedies pursuant to 42 U.S.C. § 2000e-4

11  through § 2000e-9.  Plaintiffs assert that this includes front pay, back pay, lost wages, and

12  compensatory damages pursuant to 42 U.S.C.§ 1981a(b)(3).  Similarly, Plaintiffs argue that

13  Harris's job-loss related damages are clearly relevant and admissible to establish her

14  damages recoverable pursuant to her retaliation claim.

15          During argument, counsel for Plaintiffs cited to *EEOC v. Ford Motor Credit*

16  *Company*, 531 F.Supp.2d 930 (M.D.Tenn. 2008), and *Garrison v. Baker Hughes Oilfield*

17  *Operations, Inc.*, 287 F.3d 955 (10th Cir. 2002), for the assertion that Harris has access to

18  the damage provisions of 42 U.S.C. § 2000e-5 based on the privacy violations.  These cases

19  having not been cited in Plaintiffs' response to the motion in limine, the County requested

20  an opportunity to respond to this authority.  The Court finds it appropriate to permit the

21  parties to file supplemental briefs regarding this issue.

22

23  ***Defendant's Motion in Limine RE Spousal Communications*** [Doc. # 176]

24          The County requests that testimony by Plaintiffs concerning communications between

25  each other be precluded because both Plaintiffs, during discovery, raised the issue of spousal

26  privilege on multiple occasions in order to refuse to answer questions during the discovery

27  phase.  Because Plaintiffs selectively employed the spousal privilege, the County was

28

precluded from obtaining full discovery regarding communications between the Plaintiffs.[5] The County argues that Plaintiffs should not be allowed to use the privilege as a "sword," by allowing discovery on spousal communications of their choosing, but then precluding discovery on other spousal communications by raising the privilege

Plaintiffs argues that the appropriate remedy for the selective invocation of the privilege is to find that Plaintiffs, by testifying to some communications have waived the privilege to all communications. Testimony on all spousal communications would, therefore, be permitted.

Plaintiffs point out that the County has not been prejudiced by the reliance on the spousal communication privilege because, when the privilege was invoked, it was on matters that are not relevant to the disputed issues in this case. The invocation of the spousal communication privilege on irrelevant issues has not impaired the County's ability to conduct discovery or prejudiced the County in any way and provides no basis for the County's motion. Plaintiffs also assert that, as a practical matter, any issue of privilege or non-disclosure may be raised and dealt with at trial on the basis of actual questions and testimony and that the County can simply refrain from asking Plaintiffs to testify to any spousal communications.

The Court conducted a hearing on a discovery dispute regarding the marital communications privilege. During that hearing, counsel for Plaintiffs objected to being required to assert the privilege as to all topics or waive the privilege as to all topics. During the hearing, counsel indicated that she was not aware, at that time, of any conversations between her clients that would constitute relevant evidence at trial. The minute entry states:

> The Court discusses the federal common law marital communications privilege and its possible waiver with counsel during the deposition of Plaintiff.

[5]Plaintiffs assert that, if the County believed the privilege was inappropriately invoked during depositions, the appropriate remedy was to pursue a motion to compel. Plaintiffs assert that the County's failure to file a motion to compel is not a basis for a motion in limine or any basis for a blanket exclusion of all testimony regarding spousal communications.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Counsel agree that, at this time, Defendants will not inquire into privileged communications. If Plaintiff subsequently determines that she will partially waive the privilege, leading to additional discoverable facts, a subsequent deposition may be conducted at the expense of Plaintiff. If needed at that time, counsel may contact the Court to determine the limits of any waiver.

July 17, 2008, Minute Entry.

In *In re Sause Bros. Ocean Towing*, 144 F.R.D. 111 (D.Or. 1991), the court discussed whether the inadvertent disclosure of documents waived a privilege. Factors to be considered include "(1) the reasonableness of the precautions taken against disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." 144 F.R.D. at 155. In this case, there appears to be a deliberate selective waiver of the privilege. The appropriate remedy is to find that the privilege has been waived as to all communications (any exclusion, then, would be based on irrelevance or prejudice). However, based on the agreement of counsel during the July 17, 2008, hearing, the County was not provided a full opportunity to inquire into marital communications during the depositions. Plaintiffs now assert that they wish to present communications that were discussed during the depositions. However, inquiry into marital communications was limited based on the agreement of counsel. Counsel for the County raised this issue at the time of the depositions and counsel for Plaintiffs objected to a blanket waiver. To now permit Plaintiffs to present the evidence that is available only because Plaintiffs chose to answer those questions while objecting to others would be unfair to Cochise County given the agreement counsel reached during discovery. The Court will preclude evidence of marital communications between Plaintiffs at trial.

Accordingly, IT IS ORDERED:

1.      Plaintiffs' Motion in Limine Re: Dr. Leon's Untimely Affidavit and Opinions [Doc. # 174] is GRANTED. Dr. Leon shall be limited at trial to the opinions he set forth in his August 5, 2008, report. Alternatively, the County may elect to have Dr. Leon deposed by Plaintiffs, at the County's expense, if the County wishes to present the expanded opinions at trial. In the event the County chooses to permit Plaintiffs to depose Dr. Leon so the more

1  specific opinions may be used at trial, the County shall arrange for the deposition within 30

2  days of this Order and Plaintiffs shall disclose any rebuttal expert opinions within 21 days

3  of the deposition of Dr. Leon.

4      2.      The parties may file simultaneous supplemental briefs regarding the Motion

5  in Limine Re:  Damages [Doc. # 175] on or before July 16, 2010.

6      3.      The County's Motion in Limine Re:  Spousal Communications [Doc. # 176]

7  is GRANTED. Evidence of marital communications between the Plaintiffs is precluded from

8  being presented at trial.

9      DATED this 1st day of July, 2010.

_____
Cindy K. Jorgenson
United States District Judge